IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BRACCO, et al., | No. C 12-2945 MMC |
| Appellants, | (Case Nos. 08-44624, 08-44625 Adversary Proceeding No. 08-4372 RLE) |
| v. | **ORDER AFFIRMING JUDGMENT OF BANKRUPTCY COURT** |
| KURT ALBERT LEINTZ, et al., | |
| Appellees. / | |

Before the Court is Michael and Susanne Bracco's ("the Braccos") appeal from the United States Bankruptcy Court's judgment, entered May 17, 2012, discharging the debts of Kurt Leintz ("Kurt"), Eric Leintz ("Eric"), and Kurt's wife, Carolyn Schnelle ("Carolyn") (collectively, "the Leintzs"). Having read and considered the briefing filed by the parties in connection with the appeal, the Court rules as follows.

## BACKGROUND

In December 2006, the Braccos entered into an oral agreement with Kurt, under which Kurt agreed to develop plans to double the size of the Braccos' 2000-square-foot home. (See Transcript of February 16, 2012 Telephonic Conference Re Written Decision (hereinafter, "Decision") at 7:22-24.) In March 2007, the Braccos approved a set of plans and paid $50,000 to Leintz Construction Company ("Leintz Construction") (id. at 8:5-6), a general partnership that Kurt and his brother Eric Leintz ("Eric") operated under an oral partnership agreement (id. at 4:12-15).

On May 11, 2007, the parties signed a pre-printed form "Prime Home Improvement Contract" for the project. (Id. at 8:12-13.) The contract provided for a downpayment and a schedule of five progress payments to be paid at specified project milestones. (Id. at 8:21-9:3.) The contract did not set a date for project completion. (Id. at 9:7-9.) Although an optional provision in the contract could have restricted Leintz Construction's use of the Braccos' funds, the provision was not selected. (Id. at 9:10-12.) The Braccos required Leintz Construction to use Michael Bracco's brother Tom Bracco and the Braccos' son Jason Bracco as day laborers, and further required they be paid in cash for each day they worked. (Id. at 9:16-19.) All other laborers on the project likewise were paid in cash. (Id. at 9:19-20.)

In the fall of 2007, after the first two project milestones had been met, the Braccos learned Kurt had bought a home in April 2007 and had been remodeling it; they suspected he had been using their funds for his own project. (Id. at 10:12-17.) In December 2007, the Braccos hired a designer to draw details to be incorporated into Leintz Construction's plans because they were unhappy with certain aspects of Kurt's design. (Id. at 10:22-25.) When the Braccos presented Kurt with the new plans in January 2008, he said he would not incorporate them unless the Braccos paid an additional $98,000 and signed a new contract, given the extensive nature of the changes and the rework that would need to be done. (See id. at 11:2-6; Trial Tr. vol. 1 at 46:12-16; 46:25-47:1.) The Braccos refused to comply, and Leintz Construction stopped work on the project. (See Decision at 11:5-7.)

In March, the Braccos threatened to submit a complaint to the Contractors State License Board ("CSLB"), and, in response, Leintz Construction resumed work on the job after a "change order" was signed. (Id. at 11:8-15.) The following month, the Braccos had a time clock installed at the job site for purposes of ascertaining how much work was being performed. (See id. at 11:21-23; Trial Tr. vol. 1 at 197:9-16.) The resulting time cards were not retained. (See Decision at 11:23-12:2.) Four months later, on August 22, 2008, Leintz Construction again stopped work on the project, this time without resumption. (See id. at 12:3-7; Trial Tr. vol. 1, at 52:19-22.)

On August 25, 2008, Kurt and Carolyn filed for bankruptcy pursuant to Chapter 7. (See Decision at 3:17-19.) That same date, Eric filed for Chapter 7 bankruptcy, as did Leintz Construction. (See id. at 3:19-22.) On November 14, 2008, the Braccos brought adversary proceedings against the Leintzs (see id. at 29:23-25), by which the Braccos sought, inter alia, an order denying a discharge as to Kurt and Eric under 11 U.S.C. §§ 727(a)(3). (See Decision at 3:25-4:2.)[1]

The above-referenced adversary proceedings subsequently were consolidated by the Bankruptcy Court. (See id. at 4:3.) On September 12 and 13, 2011, the Bankruptcy Court conducted a trial on the consolidated matter. (See Trial Tr. vol. I at 1; Trial Tr. vol. II at 1.) On February 16, 2012, the Bankruptcy Court found the Leintzs were entitled to a discharge (see Decision at 28:2-6) and, on May 17, 2012, judgment was entered (see Notice of Appeal, Dkt. No. 1 at 5-6). The Braccos now bring this appeal, arguing the Bankruptcy Court abused its discretion when it declined to deny a discharge to Kurt and Eric pursuant to § 727(a)(3).

**STANDARD OF REVIEW**

"Because the right to a discharge is a matter generally left to the sound discretion of the bankruptcy judge, [a reviewing court] disturb[s] this determination only if [it] find[s] a gross abuse of discretion." In re Cox (Cox I), 904 F.2d 1399, 1401 (9th Cir. 1990)." In re Cox, 41 F.3d 1294, 1296 (9th Cir. 1994). A bankruptcy court abuses its discretion if it applied the wrong legal standard, or if its factual findings were "illogical," "implausible," or "without support in inferences that may be drawn from the facts in the record." United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009).

---

[1] The Braccos also sought a denial of discharge as to Kurt and Eric under 11 U.S.C. §§ 727(a)(2), (4), and (5), and a denial of discharge as to Carolyn under 11 U.S.C. § 727(a)(4), as well as to have Kurt and Eric's debt to the Braccos found non-dischargeable under 11 U.S.C. § 523(a)(2), all such additional claims for relief being predicated on the ground of fraud and/or unexplained lost assets. In the instant appeal, the Braccos do not challenge the Bankruptcy Court's judgment in favor of the Leintzs on those claims.

3

**DISCUSSION**

**A.    Legal Standard**

Section 727(a)(3) of Title 11 provides that a bankruptcy court "shall grant the debtor a discharge, "unless . . . the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." See 11 U.S.C. § 727(a)(3).  The purpose of § 723(a)(3) is "to make the privilege of discharge dependent on a true presentation of the debtor's financial affairs," In re Cox (Cox II), 41 F.3d 1294, 1296 (9th Cir. 1994), and it "places an affirmative duty on the debtor to create books and records accurately documenting his business affairs," In re Caneva, 550 F.3d 755, 762 (9th Cir. 2008).  Exceptions to dischargeability such as that embodied in § 727(a)(3) "should be strictly construed in order to serve the Bankruptcy Act's purpose of giving debtors a fresh start."  See Cox II, 41 F.3d at 1297.

The initial burden of proof under § 727(a)(3) is on the plaintiff-creditor, who must show "that the debtor failed to maintain and preserve adequate records," and "that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions."  See id. at 1296.  If "the objecting party shows that the debtor's records are absent or are inadequate, the burden of proof then shifts to the debtor to justify the inadequacy or nonexistence of the records."  See id.

**B.    Adequacy of Debtor's Records**

The Bankruptcy Court first found that, "with the exception of the day laborers' timekeeping records," the Leintzs "produced records which gave a sufficiently detailed picture regarding the [Braccos'] construction project."  (See Decision at 19:4-7.)  The Braccos argue said finding was in error.

As noted, to meet its initial burden of proof under § 727(a)(3) a plaintiff-creditor must show "that the debtor failed to maintain and preserve adequate records," and "that such failure makes it impossible to ascertain the debtor's financial condition and material

4

business transactions." See Cox II, 41 F.3d at 1296.  "The statute does not require absolute completeness in making or keeping records." See Caneva, 550 F.3d at 761. "[T]he debtor must," however, "present sufficient written evidence which will enable his creditors reasonably to ascertain his present financial condition and to follow his business transactions for a reasonable period in the past." Id. (internal quotation and citation omitted).  Although "[r]ecords need not be kept in any special manner, nor is there any rigid standard of perfection" mandated by § 727(a)(3), "courts and creditors should not be required to speculate as to the financial history or condition of the debtor, nor should they be compelled to reconstruct the debtor's affairs." See In re Juzwiak, 89 F.3d 424, 428 (7th Cir. 1996).

      Here, the Braccos offered the testimony of Thomas Ebling, who was assigned to investigate a complaint the Braccos ultimately filed with the CSLB in late 2008.  (See Decision at 13:4-9.)  Ebling testified that Kurt Leintz told him during that investigation he "ha[d] no payroll records," "no receipts for materials," and, consequently, "no way of knowing what he did with the [Braccos'] money." (See id. at 110:18-21.)  The Braccos also offered the testimony of Michael Gabrielson, a forensic accountant they retained to review the available records, specifically bank statements, check stubs, deposits of cashiers checks, and an accounting ledger that identified expenditures related to the Bracco project. (See Trial Ex. 24; Trial Tr. vol. I at 89:3-18.)  Gabrielson testified he was unable to identify from those written records where certain money in the company's account went, and ultimately concluded that, during the three-month period he reviewed, $46,718.57 was diverted away from the Bracco project for unknown purposes (see Trial Tr. vol. I at 89:3-18; 95:12-22; 96:14-18; Trial Ex. 24).[2]

      In response, Kurt, after reviewing the list of checks upon which Gabrielson had

---

[2] The Leintzs argue that, at trial, the Braccos "focus[ed]" on "attempting to prove the funds they had paid to the Leintzs had been used for purposes other than their project" so as to support the Braccos' various fraud-based claims.  (See Appellees' Reply Brief at 5.) Although, as the Leintzs point out, Gabrielson did not expressly testify that the Leintzs' records were not adequate, the import of his testimony was to that effect.

5

1  relied, testified that approximately seventy of those checks should have been included in
2  Gabrielson's total of expenses related to the Bracco project. (See Decision at 14:19-22.)
3  In that regard, although the records the Leintzs produced did not indicate the purpose for
4  which such checks were written, Kurt testified that the expenditures were for materials,
5  transportation, food, and labor associated with the Bracco project. (See Trial Tr. vol. II at
6  81:14-87:9.) Based on Kurt's testimony, the Bankruptcy Court found the Leintzs' records
7  were adequate.
8      As the Braccos point out, however, the evidence to be considered in determining
9  whether the creditor's initial burden has been met must be "written evidence." Caneva, 550
10 F.3d at 761. "Oral testimony is not a valid substitute or supplement for concrete written
11 records," and, consequently, a debtor is "not entitled to substitute oral testimony for the
12 written documentation that [is] missing from his records." Juzwiak, 89 F.3d at 429-30
13 (affirming district court's denial of discharge of debt; holding, where debtor presented
14 checking account ledgers, canceled checks, bank statements, and tax return, bankruptcy
15 court erred in "requiring [creditor] to rely on [debtor's] unsubstantiated oral testimony
16 regarding the source of funds deposited and the details of certain disbursements").
17     Accordingly, the Court finds the Braccos met their burden of proof under § 727(a)(3),
18 and that there is insufficient evidence in the record to support a finding to the contrary.
19     **C.   Debtor's Justification**
20     In the alternative, the Bankruptcy Court found that, "to the extent the recordkeeping
21 may have been imprecise, the [Leintzs'] recordkeeping was justified under all the
22 circumstances of this case." (See Decision at 20:12-14.)
23     "Justification for a bankrupt's failure to keep or preserve books or records will
24 depend on whether others in like circumstances would ordinarily keep them." See Cox II,
25 41 F.3d at 1299 (internal quotation, citation, and alteration omitted). Factors relevant to
26 such an analysis include "the debtor's education, the sophistication of the debtor's business
27 experience, the size and complexity of the debtor's business, the debtor's personal
28 financial structure, and any other special circumstances that may exist." See id. (internal

quotation and citation omitted).

Here, the Leintzs presented evidence, and the Bankruptcy Court found, that Leintz Construction was a small company (see Decision at 4:19-24), that it worked during all relevant periods on only "three small projects" in addition to the Braccos', each worth less than $10,000 (see id. at 4:25-5:2), that Kurt and Eric owned and operated the business on their own (see id. at 5:10-13, 23-23), and that the Leintzs' contract with the Braccos could have, but did not, require the Leintzs to "account for every penny" (see id. at 20:5-6). The Leintzs also presented evidence, and the Bankruptcy Court further found, that the Leintzs had no actual regular "employees," instead hiring day laborers for purposes of the Bracco project (see id. at 19:15-18), that the Leintzs' contract with the Braccos did not require them to keep time cards or payroll records, and that the Braccos "either requested that [certain laborers] be paid in [cash], required it, or condoned it" (see id. at 19:11-20:1).[3] Lastly, the Leintzs presented expert testimony from Pamela Rogers, a Certified Professional Accountant, that the Leintzs' recordkeeping was "very similar" to that of contractors with similar-sized businesses and, indeed, "better than some" (see Trial Tr. vol. 2, at 68:8-25); no expert or other evidence was introduced to the contrary.

Although the Braccos rely heavily upon the Seventh Circuit's decision in Juzwiak, in that case testimony at trial revealed that the debtor's current business, grain transporting, reported over five million dollars in sales on its most recent tax return and that the debtor previously had held positions as bookkeeper in a farm equipment business, bookkeeper in another farm equipment business of which he was co-owner, and manager of a dealership that had ten employees, including a full-time bookkeeper. See Juzwiak, 89 F.3d at 426-27. In addition, an expert accountant testified that in his experience "similar clients" kept

---

[3] The Braccos argue that the Bankruptcy Court's consideration of the terms of the contract for the Bracco project and the Braccos' arrangement with the Leintzs regarding cash payments "re-allocat[ed]" the Leintzs' burden to the Braccos. (See Appellant's Opening Brief at 22.) The Court disagrees. The Bankruptcy Court's order clearly set forth the applicable legal standard, including the shifting of the burden of proof to the debtor to justify any failure to maintain records. (See Decision at 18:18-20.)

records that were not maintained by the debtor, see Juzwiak, 89 F.3d at 426, and the debtor's own accounting expert conceded that the majority of his clients in the same industry retained certain records that were not retained by the debtor, see id.  In the instant case, by contrast, Leintz Construction's most recent tax return listed gross receipts of $169,218 (see Appellants' Ex. 6), no evidence was presented at trial to suggest the Leintzs had bookkeeping or business experience comparable to that of the debtor in Juzwiak, and uncontradicted evidence was offered that the Leintzs' recordkeeping was "similar" to or "better than" that maintained by contractors with similar-sized businesses (see Trial Tr. vol. II at 68:8-11, 23-25); see also In re Sauntry, 390 B.R. 848 (finding one category of missing records did not preclude discharge; noting "mere ability of a complainant to prove that a specific record was not kept does not warrant a denial of discharge in its entirety, one of the harshest sanctions under the Bankruptcy Code").

Under the circumstances presented here, sufficient evidence exists to support the Bankruptcy Court's finding that the Leintzs met their burden of proof under § 727(a)(3) and that any inadequacy in the Leintzs' recordkeeping was justified.

## CONCLUSION

For the reasons stated above, the judgment of the Bankruptcy Court is hereby AFFIRMED.

**IT IS SO ORDERED.**

Dated: August 6, 2014

MAXINE M. CHESNEY
United States District Judge